MICHEL, Respondent, v. FRICK CO., Appellant. (Supreme Court, Appellate Division, Second Department. March 20, 1903.) Action by John Michel against the Frick Company. From a judgment for plaintiff, and an order denying new trial, defendant appeals. Affirmed. Tallmadge W. Foster, for appellant. William Van Wyck, for respondent.

PER CURIAM. Judgment affirmed, with costs.

GOODRICH, P. J. (dissenting). This action is brought to recover commissions under a written agreement, signed by the plaintiff and "Frick Company, per L. Howard Jenks," dated March 22, 1900, wherein was a promise to pay the plaintiff $1,000 "as a commission, which sum is to be paid out of the first payment, when contract is signed and delivered, if a 60-ton ice-making plant is sold to the Puritan Spring Hygeia Ice Co." Plaintiff agreed "to use all of his personal influence to bring about a sale of the above-mentioned ice plant." The plaintiff recovered a verdict, and the defendant appeals. In charging the jury, the court submitted three questions of fact: (1) Was Jenks, an agent of the defendant, authorized to make the contract, or was he held out by the defendant as such? (2) Did the plaintiff do what he agreed to do under the contract, viz., use all his personal influence to bring about the sale in question? (3) Was there a sale by the defendant to the Norwich Company of a 60-ton ice making plant? The defendant had moved, at the close of the plaintiff's evidence, and also at the close of the whole evidence, for a dismissal of the complaint, substantially on the ground that the plaintiff had failed to prove the affirmative of these three propositions. The exception to the denial of this motion, in connection with the exceptions to the charge on the same questions, presents the subjects to be considered on this appeal. The first question submitted by the court related to the agency or apparent authority of Jenks to make the contract with the plaintiff. Without summarizing the evidence, I think that there was sufficient to warrant the submission of this question to the jury. Second. Did the plaintiff do what he agreed to do, viz., use all his personal influence to bring about the sale? The complaint alleges the making of this contract on March 22d, which is its date, and sets out a copy of it as the basis of the action. In this contract he

agreed to use all his personal influence to bring about a sale. It would seem to go without saying that the plaintiff's agreement to use his personal influence to effect the sale to the Puritan Company (which was in fact a Mr. Blackstone) related to the future action of the plaintiff, yet it nowhere appears that he ever did anything after the date of the contract to effect, or even influence, a sale. On the contrary, the plaintiff testified that "after the night of the 20th of March I never saw Mr. Blackstone again. From that day, until after this action was begun, I did not see him. * * * I didn't see him again, because I told Jenks to go and see him. That is the reason why I didn't go to see him. I considered that I had done all that I was bound to do. He gave me his word that he was going to buy the Frick machine." The explanation of this somewhat singular situation is that there had been some conversation between Jenks and the plaintiff on March 16th, in which the plaintiff said he thought he could secure a contract from Blackstone, who was his personal friend, for the purchase of one of the Frick Company's machines, and Jenks said the company would be willing to allow him $1,000 therefor. The plaintiff had a long interview with Blackstone in regard to the Frick Company's machine, at which, according to the plaintiff's testimony, Blackstone gave him his word that he was going to buy the Frick machine. With this knowledge the plaintiff made the agreement of March 22d. Of course, any conversations with Frick or any promises by him previous to that date were merged in the agreement. It is difficult to spell out any consideration for the promise in this written agreement, other than a promise by the plaintiff thereafter to use his personal influence with Blackstone to effect a sale. As he testifies that he never thereafter saw Blackstone, and no evidence is given as to any communication direct or indirect with him, no consideration is shown for any promise on the part of the defendant, and the defendant was entitled to a dismissal of the complaint on that ground. Third. The evidence does not show a sale by the defendant to Blackstone of a 60-ton ice-making plant. On March 17th Jenks, at the request of the plaintiff, prepared a proposition, with specifications of size, power, and capacity, for the sale of a 60-ton ice-making plant. At the request of the plaintiff, it was addressed to one Stumph, who is admitted by the plaintiff to have been a dummy personage. When the Frick Company afterwards made its sale to Blackstone, a written contract of sale was made between them. This contract was for the sale, not of a 60-ton ice-making plant, but for a 30-ton plant. The cost of the Stumph machine was $36,900, of the Blackstone plant, $24,440, and the plaintiff, who was an expert, admitted that the latter plant would not, without material additions, make 60 tons of ice per day. Consequently, on the third question, the defendant was entitled to a dismissal of the complaint. The refusal to dismiss the complaint was error, and the exceptions to the charge were well taken. The judgment and order should be reversed.

HOOKER, J., concurs.